Judge Owsley
delivered the opinion of the court.
This was a writ of right brought by the present appellants, to recover that part of a tract of land of two thousand one hundred and ninety-six acres, patented in the name of Thomas Conn, dec. which is claimed by the appellee under the adverse claims of Isaac Ruddle and Mounce Bird.
The mise was joined on the mere right, and the appellants proved they were the heirs and legal representatives of Thomas Conn, dec. and produced a patent dated in 1783 from the commonwealth of Virginia, to their ancestor, for the land, and proved that the patentee, in 1784, settled up on the tract, claiming it as his own, made lasting and valuable improvements, and continued to reside thereon until the time of his death, but that his settlement and improvements did not interfere with the claim of Ruddle.
The appellee, Manifee, then proved that Ruddle, under whom he claims, in March, 1788, claiming the whole of Ruddle’s pre-emption, but the patent of which is junior in date to the patent of Conn, settled and remained thereon until his sale to Manifee in 1794, at which time Manifee took the possession, and has continued the same ever since. Both patents, that of Conn under which the appellants claim, as well as that of Ruddle, under which the appellees claim, were admitted to include the land in contest. The copy of a deed of bargain and sale, taken from the records of the county court of Scott, and purporting to be made in June, 1804, by the ancestor, Thomas Conn, dec. to the appellant, John Conn and Flournoy, for the tract of land patented to the said Thomas, was introduced, but its ad *397 mission was objected to by the appellants on the ground of the clerk having no authority to record the deed in the county of Scott, where but part of the land lies; but the objection was overruled, and the deed read in evidence.
Where a tract of land lies in two counties, a deed conveying it may be recorded in either county.
A deed from Flournoy and John Conn, bearing date in 1807, to the said Thomas Conn, dec. purporting to release to the latter all the interest which the former acquited under the deed to them of 1804, was also given in evidence; and it was also proved that possession of the land conveyed was never given by Thomas Conn to Flournoy and John Conn. The residence of the appellee upon the land, at the date of the writ, was also admitted; and the evidence being closed, and not contested by either party, the court, on the motion of the appellee, instructed the jury that the demandants could not recover any part of the land in contest.
A verdict was accordingly found for the appellee, and judgment rendered thereon against the appellants;—and to reverse that judgment they have prosecuted this appeal.
In reviewing the judgment of the circuit court, we shall assume the decision of that court. correct, in admitting the copy of the deed from Thomas Conn to Flournoy and Conn in evidence. Part of the land is admitted to lie in the county of Scott; and by the act of 1798, (2 Littell, 262) deeds may be recorded in any county where the land or any part thereof lies
With respect, however, to the appellants' right to recover the land, the main matter in contest, between the parties, we cannot accord in opinion with the circuit court
Were it not for the deed of Thomas Conn, dec. to Flournoy and Conn, of 1804, a doubt could not exist against the appellants' right. Before the execution of that deed, by uniting the actual seizin of the land with his title derived under the elder patent from the commonwealth, the decedent, Thomas Conn, became invested with a perfect right; and in the absence of that deed, it is admitted by the parties that the appellants, claiming as his heirs, might, upon his seizin, and under his right maintain their writ of right.
But it is contended, that by the deed of 1804, the title of Thomas Conn, dec. was transferred to Flournoy and John Conn, so that he could not thereafter have maintained a writ of right; and it is urged, that as respects the land now in contest, adverse possession thereof being in the appellees, the subsequent deed, purporting barely to release *398 the interest of Flournoy and Conn to Thomas Conn, cannot have revested any interest therein to Thomas; but if the deed of release conveys any thing, it is insisted, that Thomas Conn, claiming under it, must be viewed as a purchaser from Flournoy and Conn, and, as such, could not, in his life time, without previously entering upon the land, have maintained a writ of right; and as no such entry is proven, it is inferred, the appellants, claiming through him, ought not to recover.
By the act of 1798 "concerning champerty and maintenance," a deed of bargain and sale conveys the title, though possession be adverse.
A deed purporting to be a release, if made on valuable consideration, will operate as a deed of bargain and sale.
It should be recollected that the possession held by the appellee, at the date of the release, had been acquired several years previous to the date of the deed from Thomas Conn to Flournoy and Conn, so that if the possession was adverse when the release was executed by the latter, it must have been so when the deed was given by the former. Considering the appellees' possession adverse, therefore, it follows, upon common law principles, as well as under the statute against champerty and maintainance, in force in this country until the passage of the act of 1798, (2 Litt. 230) that the deed from Thomas Conn passed no title to Flournoy and Conn.
But by the act of 1798, purchases of interests or claims to land held under the laws of Virginia, are permitted; and according to the decision of the supreme court of the nation, in the case of Walden against the heirs of Gratz, 1 Wheaton, 292, the title will not only pass, by a deed executed since the passage of the act, but a suit may be also maintained in the name of the vendee.
If, therefore, by the deed from Thomas, the title, under the act of 1798, passed to Flournoy and Conn, so, we apprehend, by force of the act, Thomas must, by their deed to him, have again become invested with the title.
Supposing the appellee to have had the adverse possession, it is true, the latter deed, in strict propriety, cannot be said to pass the title as a deed of release, but though inoperative as a deed of release, yet as it purports to have been made upon consideration of value, and contains words sufficiently comprehensive, it must be construed to operate as a deed of bargain and sale
Whether, therefore, the operation of those deeds be considered with or without the statute of 1798, it equally follows they cannot prevent the appellants from maintaining their writ of right.
Considered without the statute, as in that case the deed *399 from Thomas Conn would be inoperative, the title must be supposed still residing in him, and consequently his heirs, after his decease, were entitled to their writ; and considered under the statute, upon the supposition of the decision of the supreme court in the case cited from Wheaton, being correct, the heirs must also be entitled to their writ. For if, as was held in that case, land may, since the statute, be sold and conveyed whilst in the adverse possession of others so as to pass the title and enable the alienee to maintain an ejectment, we apprehend the statute must be construed to authorise the purchaser of such a claim, without entering upon the land, to maintain any action for its recovery which could have been maintained by the vendor. The statute is general in its provisions, and authorises the purchasing of every description of interest, whether legal or equitable, to lands held under the land laws of Virginia, and to require of the purchaser an actual entry to enable him to maintain a real action for the recovery of lands of which his vendor had been actually seized, would be imputing to the makers of the statute what cannot be for a moment supposed, an intention to provide for the sale of interests in lands, by a mode of conveyance which might be effectual to pass the right from the vendor, but which, at the same time, would not clothe the vendee with such an interest as could enable him, by any legal means, to assert his right: Thus, for example, there may be a disseizin of lands held under the laws of Virginia, and the disseizor may have continued in possession, claiming the land as his own, for twenty years—by the lapse of time the disseizor’s right to enter is tolled—he could not, therefore, regain the possession by entry, but having been once actually seized, might maintain a writ of right. But if the alienee of the disseizee were not permitted before entry to maintain such a writ, it is plain, the conveyance, although effectual to pass the right from the vendor, would not furnish the vendee with the means of asserting the right: The right could not be asserted in the name of the vendor, because, by the conveyance all the interest with which he was invested, is transferred to another;—and the vendee could not maintain an ejectment in his own name, because, to maintain that action he must shew a right of entry, and the vendor’s right of entry being tolled by lapse of time, the vendee could not, under the conveyance, acquire such a right;—he could not acquire the actual seizin by entering upon the *400 land, because his right to entry, owing to the lapse of time, is forbidden by law—and he could maintain no other real action, because the same kind of seizin is necessary to maintain other real actions as is required to maintain a writ of right.
An alienee may maintain a writ of right on the actual seizing of his alienor, tho' alienee was never seized.
Pope and Talbot for appellants, Wickliffe for appellee.
Upon the whole, we are of opinion the appellants have shewn themselves entitled to maintain their writ, and the circuit court consequently erred in its instructions to the jury. The judgment must therefore be reversed with cost, the cause remanded, and further proceedings had, not inconsistent with this opinion.